UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GREGORY NORWOOD, CDC #J-53407, | ) | Case No. 07-CV-0057-WQH (JMA) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION RE** |
| | ) | **(1) DENYING DEFENDANTS'** |
| v. | ) | **MOTIONS TO DISMISS FIRST** |
| | ) | **AMENDED COMPLAINT PURSUANT TO** |
| JEANNE WOODFORD, et al., | ) | **FED. R. CIV. P. 12(b)(6) AND** |
| | ) | **(2) DISMISSAL OF CLAIMS** |
| Defendants. | ) | **AGAINST DEFENDANT RUTLEDGE** |
| | ) | |
| ————————————————————————— | ) | **[Doc. Nos. 33, 44, 58]** |

This matter comes before the Court on three Motions to Dismiss the First Amended Complaint ("FAC") brought by Defendants Jeanne Woodford ("Woodford") and J.A. Janda ("Janda") [Doc. No. 33], M.E. Bourland ("Bourland") [Doc. No. 44], and J.A. Giurbino ("Giurbino") [Doc. No. 58] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court has considered the papers filed in support of and in opposition to Defendants' motions, as well as all relevant pleadings and documents in the Court's file.[1] For the following reasons, the Court recommends that Defendants' Motions to Dismiss be **DENIED**.

---

[1]Plaintiff filed oppositions to the motions brought by Defendants Woodford, Janda, and Giurbino, but did not file an opposition to the motion brought by Defendant Bourland.

I.   **FACTUAL BACKGROUND**

On August 18, 2005, Calipatria State Prison ("Calipatria") was placed on lockdown following an alleged assault involving Hispanic inmates and staff.  FAC at 22.[2]  On November 7, 2005, Plaintiff was transferred from California State Prison, Sacramento, to Calipatria.  Id.[3]  Upon Plaintiff's arrival, Calipatria remained on lockdown stemming from the August 18, 2005 incident.  Id.  Plaintiff alleges that as a result of the lockdown, he was confined to his cell for twenty-four hours a day, seven days a week, with the exception of brief shower periods.  FAC at 3.  Plaintiff, proceeding *pro se*, alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated when Defendants Woodford, Janda, Bourland, and Giurbino deprived him of outdoor exercise from November 7, 2005 to December 16, 2005, a period of 39 days. Id.[4]  The deprivation of outdoor exercise allegedly caused Plaintiff to suffer headaches, muscle cramps, stress, anxiety, and depression.  Id.[5]

---

[2]Unless otherwise noted, page number references used by the Court herein refer to the numbers printed by the Court's docketing system, located at the top of each page.

[3]Plaintiff has since been relocated again and is currently incarcerated at California State Prison, Corcoran.

[4]Defendants note that according to the FAC, Plaintiff was transferred to the Administrative Segregation Unit on December 10, 2005, resulting in a deprivation of outdoor exercise of only 33 days which can be attributed to the lockdown. Defs.' Mem. (Woodford & Janda) at 6 n.2; (Giurbino) at 7 n.1; (Bourland) at 6 n.2 (citing FAC at 8-11).  However, because Plaintiff does not allege that the lockdown did *not* affect outdoor exercise in the Administrative Segregation Unit, this Court will conduct its analysis using the 39 day period alleged in the Complaint.

[5]Plaintiff also alleges a separate claim for violation of his First Amendment rights against Defendant Torres.  Defendant Torres has not yet been served.  Thus, this Report and Recommendation does not

On November 21, 2005, Plaintiff filed a CDC Form 602 grievance on behalf of a group of inmates to request the provision of outdoor exercise.  Id. at 21-23.  The grievance was apparently denied by Defendant Janda, the then Associate Warden. FAC at 6.[6]  Plaintiff then filed a Second Level Appeal, the denial of which was issued and signed by Defendant Bourland, the Chief Deputy Warden at the time.  Id. at 24-25.  Plaintiff's Director's Level Appeal was also denied.  Id. at 26.  The denials indicate that no recreational activities were permitted for general population inmates due to the State of Emergency instituted on August 18, 2005.  Id. at 24, 26.  The denials also indicate that the modified program and lockdown were initiated for reasons of security and safety, the continued suspension of yard privileges was necessary, and the decision regarding the reinstatement of yard privileges was being reviewed on a daily basis.  FAC at 24-26.

**II.  DEFENDANTS' FED. R. CIV. P. 12(b)(6) MOTION**

Defendants seek dismissal of Plaintiff's First Amended Complaint on the grounds that: (1) Plaintiff has failed to sufficiently allege an Eighth Amendment claim relating to the deprivation of outdoor exercise and (2) Defendants are entitled to qualified immunity.  Defs.' Mem. (Woodford & Janda) at 8; (Giurbino) at 9; (Bourland) at 8.

//

---

address the claim against him.

[6]Plaintiff has attached copies of his Appeal Form, Second Level Appeal Response, and Director's Level Appeal Decision to his FAC.  See FAC at 21-26.  Plaintiff has not attached a copy of the denial of his original Form 602 grievance.

07cv0057

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint.  A claim can only be dismissed if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

The court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds*, Davis v. Scherer, 468 U.S. 183 (1984).  Unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim, a complaint cannot be dismissed without leave to amend.  Conley, 355 U.S. at 45-46; see also Lopez v. Smith, 203 F.3d 1122, 1129-30 (9th Cir. 2000).

Where a plaintiff appears *pro se*, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  Ferdik v.

07cv0057

Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992); see also Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) ("Presumably unskilled in the law, the *pro se* litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel."). In giving liberal interpretation to a *pro se* civil rights complaint, however, a court "may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id.; see also Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984) (conclusory allegations unsupported by facts are insufficient to state a claim under section 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." Jones, 733 F.2d at 649 (internal quotation omitted).

**B.   Eighth Amendment - Deprivation of Outdoor Exercise**

"Whatever rights one may lose at the prison gates, . . . the full protections of the eighth amendment most certainly remain in force. The whole point of the amendment is to protect persons convicted of crimes." Spain v. Procunier, 600 F.2d 189, 193-94 (9th Cir. 1979). The Eighth Amendment, however, is not a basis for broad prison reform. It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable. Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982) (citing Rhodes v. Chapman, 452 U.S. 337 (1981)). Rather,

1  the Eighth Amendment proscribes the "unnecessary and wanton
2  infliction of pain," which includes those sanctions that are "so
3  totally without penological justification that it results in the
4  gratuitous infliction of suffering." <u>Gregg v. Georgia</u>, 428 U.S.
5  153, 173, 183 (1976); <u>see also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825,
6  834 (1994).  This includes not only physical torture, but any
7  punishment incompatible with "the evolving standards of decency
8  that mark the progress of a maturing society." <u>Trop v. Dulles</u>,
9  356 U.S. 86, 101 (1958); <u>see</u> <u>also</u> <u>Estelle v. Gamble</u>, 429 U.S. 97,
10 102-03 (1976).

11      In <u>Spain</u>, the court stated that "regular outdoor exercise is
12 extremely important to the psychological and physical well being
13 of the inmates." <u>Spain</u>, 600 F.2d at 199.  Although courts have
14 recognized that prison administrators may need, on occasion, to
15 briefly deprive an inmate of outdoor exercise due to logistical
16 problems, a long-term deprivation, even due to practical
17 difficulties, may constitute cruel and unusual punishment under
18 the Eighth Amendment.  <u>Allen v. Sakai</u>, 48 F.3d 1082, 1088 (9th
19 Cir. 1995).  To assert an Eighth Amendment claim for deprivation
20 of humane conditions of confinement, a prisoner must satisfy two
21 requirements, one of which is objective and the other of which is
22 subjective.  <u>Farmer</u>, 511 U.S. at 834; <u>Allen</u>, 48 F.3d at 1087.

23      "Under the objective requirement, the prison official's acts
24 or omissions must deprive an inmate of 'the minimal civilized
25 measure of life's necessities.'" <u>Allen</u>, 48 F.3d at 1087
26 (citation omitted).  A prisoner meets the objective requirement
27 by alleging the deprivation of what courts have defined as a
28 basic human need.  <u>Id.</u> at 1088.

07cv0057

1    The subjective requirement, relating to the prison
2    official's state of mind, requires "deliberate indifference."
3    Id. at 1087.  "Deliberate indifference" exists when a prison
4    official "knows of and disregards an excessive risk to inmate
5    health or safety; the official must both be aware of facts from
6    which the inference could be drawn that a substantial risk of
7    serious harm exists, and he must also draw the inference."
8    Farmer, 511 U.S. at 837.  Finally, the court must analyze each
9    claimed violation in light of these requirements, for Eighth
10   Amendment violations may not be based on the "totality of
11   conditions" at a prison.  Hoptowit, 682 F.2d at 1246-47.

                    **1.    Objective Requirement**

13   Plaintiff contends that outdoor exercise constitutes "a
14   basic human need" and Defendants, by denying him outdoor exercise
15   for 39 days, deprived him of this need.  FAC at 3.  Defendants
16   contend that Plaintiff has not sufficiently alleged the objective
17   element of an Eighth Amendment claim because his alleged
18   deprivation resulted from a lockdown of the entire general
19   population triggered by multiple inmate attempted murders of
20   prison staff.  Defs.' Mem. (Woodford & Janda) at 10-13;
21   (Bourland) at 11-13; (Giurbino) at 11-13.

22   In Hayward v. Procunier, the case upon which Defendants
23   primarily rely, the court acknowledged that when a lockdown is
24   instituted in response to a genuine emergency, decisions
25   regarding when and how to provide for outdoor exercise "are
26   delicate ones, and those charged with them must be given
27   reasonable leeway."  Hayward v. Procunier, 629 F.2d 599, 603 (9th
28   Cir. 1980).  Plaintiff, on the other hand, cites to, inter alia,

07cv0057

1  Lopez v. Smith and Allen v. Sakai.  In Lopez, the Ninth Circuit
2  found that a complete denial of exercise lasting 6-1/2 weeks
3  (i.e., 46 days) was sufficient to invoke Eighth Amendment
4  protection.  Lopez, 203 F.3d at 1133.  In Allen, the Ninth
5  Circuit found that permitting inmates only 45 minutes of outdoor
6  exercise per week over a 6 week period (i.e., 42 days) was also
7  sufficient to meet the objective element of an Eighth Amendment
8  claim.  Allen, 48 F.3d at 1086-87.

9      In Defendants' view, cases which involve a lockdown
10 situation should be distinguished from those which do not.
11 Defendants accordingly ask the Court to disregard Allen and Lopez
12 on the basis that the periods of deprivation of outdoor exercise
13 in those cases did not arise in response to an emergency lockdown
14 situation.  Defs.' Mem. (Woodford & Janda) at 12; (Bourland) at
15 12; (Giurbino) at 13.  The Court declines to do so.  Defendants
16 have cited no authority supporting their argument that an
17 emergency lockdown situation excuses the deprivation of what the
18 courts have found to be a "basic human need" under the objective
19 component of an Eighth Amendment claim.  See Allen, 48 F.3d at
20 1088.  Although the Ninth Circuit found the 28 day deprivation in
21 Hayward did not cross the Eighth Amendment line because of an
22 emergency lockdown situation, the court did not make a finding
23 that the claim did not meet the objective component.  Hayward,
24 629 F.2d at 603.  Moreover, Hayward is distinguishable as the
25 plaintiffs in that case were permitted outdoor exercise within a
26 month after the imposition of the lockdown.  Id.  The same is not
27 true here, if Plaintiff's allegations are accepted as true.
28     Plaintiff alleges a deprivation of outdoor exercise of 39

07cv0057

1  days.  Though the 39 day deprivation is less than the 42 and 46

2  day deprivations found to invoke Eighth Amendment protection in

3  Allen and Lopez, neither Allen, Lopez, nor any other case

4  suggests that a 42 or 46 day deprivation constitutes the minimum

5  amount of time required to invoke Eighth Amendment protection,

6  and the Court declines to apply a bright line test requiring that

7  minimum duration.  The Court finds that Plaintiff's alleged

8  deprivation is sufficiently close in duration to the deprivations

9  in both Allen and Lopez that Eighth Amendment protection may be

10 invoked.  Accordingly, the Court concludes that Plaintiff has

11 sufficiently alleged the objective element of an Eighth Amendment

12 claim.

13                    **2.   Subjective Requirement**

14      Defendants also argue that Plaintiff has not established the

15 subjective component of an Eighth Amendment claim.  As set forth

16 above, the subjective component requires "deliberate

17 indifference."  Allen, 48 F.3d at 1087.  Deliberate indifference

18 is found when a prison official knows of and disregards an

19 excessive risk to inmate health or safety.  Farmer, 511 U.S. at

20 837.  The Court shall discuss the subjective component as to each

21 Defendant in turn.

22                    **a.   Defendant Woodford**

23      Plaintiff alleges that Defendant Woodford, as Director of

24 California State Prisons during the relevant time period between

25 November 7, 2005 and December 16, 2005, was responsible for

26 Plaintiff's deprivation of outdoor exercise because "she had to

27 approve the deprivation period."  FAC at 2.  Defendant Woodford

28 argues that the subjective requirement is not satisfied because

07cv0057

1   Plaintiff makes no allegations that the lockdown or deprivation
2   was directed at him, or that she acted with deliberate
3   indifference toward Plaintiff.  Woodford contends instead that
4   she acted in accordance with an emergency situation triggered by
5   multiple attempted murders of staff by inmates.  Defs.' Mem.
6   (Woodford & Janda) at 14-15.
7        Defendant Woodford fails to cite any authority supporting
8   her position that the subjective element is only satisfied when
9   the deprivation is targeted at a specific inmate, and the Court
10  declines to draw this conclusion.  The inquiry under the
11  subjective requirement is whether the Defendant knew of and
12  disregarded an excessive risk to Plaintiff's health or safety --
13  specifically, whether Defendant knew that the lack of outdoor
14  exercise alleged by Plaintiff presented an excessive risk to
15  Plaintiff's health or safety.  Defendant Woodford's suggestion
16  that the subjective element can only be met if the lockdown or
17  deprivation was targeted at a specific inmate thus misses the
18  point.  Plaintiff need not allege that the deprivation was
19  directed at him in order to satisfy the subjective requirement.
20  Rather, he need only allege that Defendant acted with deliberate
21  indifference.  Turning to this issue, Defendant Woodford
22  argues that because the lockdown was in response to investigating
23  and preventing further potentially deadly prison violence, she
24  cannot be found to have acted with the requisite state of mind.
25  In support of her argument, Defendant Woodford cites to the cases
26  of Hurd v. Garcia and Hayes v. Garcia, in which courts in this
27  district found that 5 and 10 month deprivations of outdoor
28  exercise did not meet the subjective component when the

1  deprivations were initiated for the primary purpose of responding

2  to, investigating and preventing prison violence.  See Hayes v.

3  Garcia, 461 F. Supp. 2d 1198, 1207-08 (S.D. Cal. 2006); see also

4  Hurd v. Garcia, 454 F. Supp. 2d 1032, 1044 (S.D. Cal. 2006).

5      This Court recognizes that in some circumstances, an

6  emergency lockdown situation may justify a deprivation of outdoor

7  exercise and may lead to a finding that the subjective

8  requirement of an Eighth Amendment claim has not been met.

9  However, the courts in Hurd and Hayes made their findings on

10  motions for summary judgment, and only after the plaintiffs

11  failed to set forth evidence of deliberate indifference.  Hurd,

12  454 F. Supp. 2d at 1043; Hayes, 461, F. Supp. 2d at 1207.  On a

13  motion to dismiss, the court must accept as true all material

14  allegations in the complaint, as well as reasonable inferences to

15  be drawn from them, and must construe the complaint in the light

16  most favorable to the plaintiff.  NL Indus.,792 F.2d at 898;

17  Parks Sch. of Bus., 51 F.3d at 1484.  Here, Plaintiff alleges the

18  lockdown was not in response to an emergency situation or for

19  penological reasons, but rather was implemented to punish him and

20  was "utilize[d] as a deterrent to future staff assaults by

21  subjecting inmates to such extreme suffering[] that they would

22  dread another lockdown."  FAC at 5, 7.  As to Defendant Woodford

23  specifically, Plaintiff alleges that she, as Director of

24  California State Prisons, approved the deprivation period.

25  Reading the pleadings liberally, Plaintiff has adequately alleged

26  that Defendant Woodford acted with deliberate indifference

27  because she approved the deprivation period and knew that the

28  lack of outdoor exercise presented a risk to Plaintiff's health

07cv0057

1  and safety.  Plaintiff is entitled to offer evidence to support

2  his claims.

3              **b.    Defendants Janda and Bourland**

4       Plaintiff alleges that Defendants Janda and Bourland, as

5  Associate Warden and Chief Deputy Warden of Calipatria between

6  November 7, 2005 and December 16, 2005, respectively, were

7  responsible for Plaintiff's deprivation because both Defendants

8  were made aware of the deprivation through his CDC Form 602

9  grievance, and because both Defendants could have provided him

10 with outdoor exercise.  FAC at 2.  Defendants Janda and Bourland,

11 like Defendant Woodford, contend that the subjective requirement

12 cannot be established when the lockdown and resultant deprivation

13 of outdoor exercise were instituted in response to an emergency

14 situation.  Defs.' Mem. (Woodford & Janda) at 16; (Bourland) at

15 13-16.  As discussed above, the Court finds this argument

16 unconvincing at this stage in the case.

17      Defendants Janda and Bourland also argue that by Plaintiff's

18 own pleading, they had no authority to override the state of

19 emergency and provide Plaintiff with outdoor exercise

20 opportunities since Defendant Woodford had to approve the

21 lockdown.  Defs.' Mem. (Woodford & Janda) at 16; (Bourland) at

22 13-16.  Neither defendant, however, has established that

23 Plaintiff, by his own pleading, concedes that Janda and Bourland

24 had no authority to override the state of emergency and provide

25 Plaintiff with outdoor exercise.  Defs.' Mem. (Woodford & Janda)

26 at 16; (Bourland) at 16.  To the contrary, Plaintiff has

27 specifically alleged that Defendants Janda and Bourland were both

28 made aware of his deprivation of outdoor exercise through his CDC

Form 602 grievance and that both defendants could have provided
him with outdoor exercise opportunities.  FAC at 2.  Reading the
pleadings liberally, the Court finds that Plaintiff has
sufficiently alleged that Defendants Janda and Bourland acted
with deliberate indifference because they knew of Plaintiff's
deprivation of outdoor exercise and the risk the deprivation
presented to Plaintiff's health and safety, and that they could
have provided Plaintiff with outdoor exercise opportunities but
failed to do so.

### c.   Defendant Giurbino

Plaintiff alleges that Defendant Giurbino, as Warden of
Calipatria between November 7, 2005 and December 16, 2005, was
responsible for Plaintiff's deprivation because he was
responsible for Plaintiff's custody, treatment, and discipline,
and because he had to approve the lockdown.  FAC at 5.  Like the
other three defendants, Giurbino argues that the subjective
component cannot be satisfied because the deprivation was in
response to an emergency situation.  The Court finds this
argument unconvincing for the same reasons set forth above.

Defendant Giurbino further argues that because the
deprivation of outdoor exercise had to be approved by Defendant
Woodford in her capacity as Director of Prisons, he cannot be
found to have acted with the requisite state of mind,
particularly because the lockdown was not instituted without
oversight.  Def.'s Mem. (Giurbino) at 14-16.  Plaintiff has
alleged, however, that Defendant Giurbino, in addition to
Defendant Woodford, had to approve the lockdown and deprivation
period.  FAC at 5.  Reading the pleadings liberally, the Court

07cv0057

finds Plaintiff has adequately alleged that Defendant Giurbino
acted with deliberate indifference because he approved of the
lockdown, knew that the lack of outdoor exercise presented a risk
to Plaintiff's health and safety, and could have provided
Plaintiff with outdoor exercise opportunities, but failed to do
so.

The Court accordingly concludes that Plaintiff has made
sufficient allegations to meet the subjective element of an
Eighth Amendment claim as to all four defendants.

**C.   Qualified Immunity**

Defendants further contend that they are entitled to
dismissal pursuant to Fed. R. Civ. P. 12(b)(6) based on their
qualified immunity.  The entitlement to qualified immunity "is an
immunity from suit rather than a mere defense to liability."
<u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985) (emphasis omitted).
"[Q]ualified immunity operates 'to ensure that before they are
subjected to suit, officers are on notice their conduct is
unlawful.'"  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (<u>citing</u> <u>Saucier v.</u>
<u>Katz</u>, 533 U.S. 194, 206 (1991)).  The defense of qualified
immunity protects "government officials . . . from liability for
civil damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457
U.S. 800, 818 (1982).

### 1.   Step One – Constitutional Violation

The threshold question in a qualified immunity analysis is
whether the plaintiff's allegations, if true, establish a
constitutional violation.  <u>Saucier</u>, 533 U.S. at 201; <u>Jackson v.</u>

07cv0057

1   City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); Johnson v.

2   County of Los Angeles, 340 F.3d 787, 791 (9th Cir. 2003) (noting

3   that because qualified immunity is "'an entitlement not to stand

4   trial' . . . courts, not juries, [must] settle the ultimate

5   questions of qualified immunity") (quoting Mitchell, 472 U.S. at

6   526). "If no constitutional right would have been violated were

7   the allegations established, there is no necessity for further

8   inquiries concerning qualified immunity." Saucier, 533 U.S. at

9   201; see also Haynie v. County of Los Angeles, 339 F.3d 1071,

10  1078 (9th Cir. 2003).

11       As discussed above, the Court has found, taking the facts

12  alleged in the Complaint in the light most favorable to

13  Plaintiff, that Plaintiff has adequately alleged an Eighth

14  Amendment claim against Defendants for denying him any outdoor

15  exercise for a period of 39 days. Accordingly, because

16  Plaintiff's allegations survive the first prong of qualified

17  immunity analysis, the Court must turn to the

18  next inquiry.

19                  **2.   Step Two – Clearly Established Law**

20       If a constitutional violation could be made out on a

21  favorable view of Plaintiff's allegations, "the next, sequential

22  step is to ask whether the right was clearly established."

23  Saucier, 533 U.S. at 201. "The relevant, dispositive inquiry in

24  determining whether a right is clearly established is whether it

25  would be clear to a reasonable officer that his conduct was

26  unlawful in the situation he confronted." Id. at 202. "If the

27  law did not put the officer on notice that his conduct would be

28  clearly unlawful," a finding of qualified immunity is

                                    15

1    appropriate, as "qualified immunity protects 'all but the plainly

2    incompetent or those who knowingly violate the law'." Id.

3    (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

4        Here, Plaintiff alleges denial of any outdoor exercise for

5    39 days as a result of Defendants' conduct.  Defendants argue

6    that there is no clearly established right to outdoor exercise

7    under the specific facts of this case.  Defs.' Mem. (Woodford &

8    Janda) at 16-18; (Giurbino) at 16-18; (Bourland) at 16-18.

9    Specifically, Defendants contend that "the call is so close" as

10   to whether a right to outdoor exercise existed under the facts of

11   this case that it cannot be said to have been clearly

12   established.  Id.  They also argue that there is a "void" in

13   authority addressing the deprivation of outdoor exercise during a

14   period between 28 and 42 days, and ask the Court to consider the

15   difference between normal prison operations and an emergency

16   lockdown situation.  Id.

17       Under Saucier, it is not required that "courts must have

18   agreed upon the precise formulation of the standard." Saucier,

19   533 U.S. at 202.  Rather, so long as various courts have found

20   that certain conduct is a constitutional violation "under facts

21   not distinguishable in a fair way from the facts presented in the

22   case at hand," an officer is not entitled to qualified immunity.

23   Id. at 202-03.  See also Hope, 536 U.S. at 739 ("This is not to

24   say that an official action is protected by qualified immunity

25   unless the very action in question has previously been held

26   unlawful . . . but it is to say that in the light of pre-existing

27   law the unlawfulness must be apparent[]" (citations omitted)).

28   It is also recognized that officers may make reasonable mistakes

07cv0057

1  as to the legal restraints on particular conduct.  "If the
2  officer's mistake as to what the law requires is reasonable,
3  however, the officer is entitled to the immunity defense."
4  <u>Saucier</u>, 533 U.S. at 205.

5      The critical inquiry here is whether reasonable prison
6  officials in Defendants' positions would have believed that
7  depriving Plaintiff of outdoor exercise for 39 days was
8  constitutionally permissible.  Stated differently, the Court must
9  determine whether Defendants were on "fair warning" that their
10 alleged treatment of Plaintiff was unconstitutional.  <u>See</u> <u>Hope</u>,
11 536 U.S. at 741.  The Court finds that it was clearly established
12 in 2005, when the deprivation allegedly occurred, that the denial
13 of outdoor exercise for prison inmates for an extended period of
14 time was a violation of the Eighth Amendment.  <u>See</u> <u>Spain</u>, 600
15 F.2d at 199; <u>Allen</u>, 48 F.3d at 1088; <u>Keenan v. Hall</u>, 83 F.3d
16 1083, 1089-90.  Although these cases do not involve precisely the
17 same facts as those present here, they provided Defendants with
18 fair warning concerning their conduct.  "[O]fficials can still be
19 on notice that their conduct violates established law even in
20 novel factual circumstances."  <u>Hope</u>, 536 U.S. at 741.

21     The Court concludes that, notwithstanding the lockdown, any
22 reasonable official in Defendants' positions would have
23 understood that the denial of outdoor exercise for an extended
24 period of time was unconstitutional.  The Eighth Amendment may be
25 violated even in a lockdown situation.  <u>See</u>, <u>e.g.</u>, <u>Hayward</u>, 629
26 F.2d at 603 (examining conditions imposed during an emergency
27 lockdown to determine whether they crossed the Eighth Amendment
28 line).  Furthermore, as discussed above, Plaintiff does *not*

07cv0057

1  allege that the deprivation was a response to an emergency
2  situation or that it was due to penological reasons.  Rather, he
3  alleges it was implemented to punish him and to inflict "extreme
4  suffering" upon the inmates.  FAC at 5, 7.

5      Finally, although Defendants Janda and Bourland advance the
6  additional argument that reasonable officers in their positions
7  would not know they had a "duty to usurp the authority of the
8  Director of California State Prisons, ignore the confines of the
9  lockdown, and thereby provide inmates with outdoor exercise,"
10 they provide absolutely no authority supporting their position.

11     For the foregoing reasons, the Court recommends that
12 Defendants' Motion to Dismiss Plaintiff's First Amended Complaint
13 on qualified immunity grounds be **DENIED.**

14

15 **III.   DEFENDANT RUTLEDGE**

16     The original Complaint in this case set forth two claims: an
17 Eighth Amendment claim against Woodford, Bourland, Giurbino and
18 Janda, and a Fourteenth Amendment claim against Torres and
19 Rutledge.  Compl. [Doc. No. 1] at 1-2.  After the Court dismissed
20 Plaintiff's original complaint without prejudice (see Mar. 15,
21 2007 Order, Doc. No. 8), Plaintiff filed a First Amended
22 Complaint, which is presently the operative pleading in this
23 case.  The First Amended Complaint sets forth two claims: again,
24 an Eighth Amendment claim against Woodford, Bourland, Giurbino
25 and Janda (referred to by Plaintiff in the FAC as "Ground One"),
26 and a First Amendment claim against Torres (referred to by
27 Plaintiff in the FAC as "Ground Two").  FAC at 1-14.  Plaintiff
28 explicitly states that he "names no other defendant as to Ground

07cv0057

Two." <u>Id.</u> at 9.  Although Plaintiff refers to Rutledge in the supporting facts relating to his First Amendment claim (<u>see id.</u> at 8, 10), it appears that Plaintiff did not intend that he be named as a defendant.

The Court's March 15, 2007 order dismissing Plaintiff's original Complaint expressly warned Plaintiff that his First Amended Complaint "must be complete in itself without reference to the superseded pleading," and that "[d]efendants not named and all claims not re-alleged in the Amended Complaint will be deemed to have been waived."  Mar. 15, 2007 Order at 9.  Accordingly, because Defendant Rutledge is not named as a defendant in the FAC, the Court recommends that any claims against him be dismissed and that his status be reflected as "terminated" on the Court's docket.

**IV.   CONCLUSION AND RECOMMENDATION**

For the reasons set forth above, this Court recommends that the District Judge issue an Order:

1.   **DENYING** Defendants' Motions to Dismiss Plaintiff's Eighth Amendment claim;

2.   **DENYING** Defendants' Motions to Dismiss on qualified immunity grounds; and

3.   **DISMISSING** any claims against Defendant Rutledge.

This report and recommendation will be submitted to the Honorable William Q. Hayes, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before **<u>July 18, 2008</u>**.  The

07cv0057

document should be captioned "Objections to Report and Recommendation."  Any reply to the Objections shall be served and filed on or before **August 8, 2008**.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

     **IT IS SO ORDERED.**

DATED:   June 30, 2008

                                    Jan M. Adler
                                    U.S. Magistrate Judge